UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-20954-CR-SEITZ/O'SULLIVAN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

NEVILLE EBANKS,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court on the Motion to Dismiss Indictment Based on Post Indictment Delay (DE# 127, 6/19/09) filed by defendant Neville Ebanks. This matter was referred to the undersigned by the Honorable Patricia A. Seitz, United States District Court Judge for the Southern District of Florida. (DE# 137, 8/25/09). Having held a hearing and having carefully reviewed the applicable filings and law, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss Indictment Based on Post Indictment Delay (DE# 127, 6/19/09) be **GRANTED**.

## INTRODUCTION

Defendant Neville Ebanks is charged with conspiracy to import cocaine into the United States in violation of Title 21, United States Code, Section 963; conspiracy to possess cocaine with intent to distribute in violation of Title 21, United States Code, Section 846 and attempt to import cocaine into the United States in violation of Title 21, United States Code, Section 963. See Superceding Indictment (DE# 45, 4/28/04).

On June 16, 2009, the defendant filed the instant Motion to Dismiss Indictment

Based on Post Indictment Delay (DE# 127, 6/19/09). The government filed its response on July 7, 2009. See Government's Response to Defendant's Motion to Dismiss Indictment Based on Post Indictment Delay (DE# 131, 7/7/09). The government's response included the Declaration of Drug Enforcement Administration (hereinafter "DEA") Special Agent George Kissell (DE# 131-2) as an exhibit. The defendant filed his reply on July 16, 2009. See Reply to Government's Response to Defendant's Motion to Dismiss (DE# 132, 7/16/09).

The undersigned held an evidentiary hearing on August 24, 2009. The defendant and DEA Special Agent George Kissell testified at the hearing. The Court admitted the Authorization Pursuant to Listening Devices Act and the Sentencing Memorandum in Support of Rule 35 Motion in Case No. 05-80053-CR-Hurley, as Defendant's Exhibits 1 and 3, respectively.

## FINDINGS OF FACT

The defendant is a citizen of the Commonwealth of the Bahamas (hereinafter "Bahamas"). Prior to his arrest on May 8, 2009, the defendant has been residing in Nicholls Town, Andros Island, Bahamas under his own name for five years. During that time, the defendant traveled to other islands within the Bahamas under his own name. The defendant learned of the indictment in the instant case in May 2009 when he was arrested onboard a vessel and brought to the United States by the United States Coast Guard.

The charges against the defendant arise from a joint investigation by the United States government and the Royal Bahamian Police Force (hereinafter "Bahamian

2

police") into the drug trafficking activities of an individual named William Saunders.[1] The defendant was also being investigated for his involvement in a drug distribution business in the Bahamas. The Bahamian police took the lead because the investigation took place in the Bahamas and the targets of the investigation were Bahamian citizens. Between March 23 and April 20, 2003, the Bahamian government authorized wire interceptions (Defendant's Exhibit 1) on telephone numbers belonging to William Saunders. During these wire interceptions, authorities learned that 230 kilograms of cocaine were bound for the United States onboard a vessel. Based on information obtained from the wire interceptions, on April 12, 2003, Bahamian police intercepted a vessel and piloted it back to Nassau, Bahamas. On April 13, 2003, the Coast Guard searched the vessel and located 230 kilograms of cocaine secreted in a fuel tank. The Bahamian authorities took possession of the drugs, tested the drugs and kept the wire recordings. Bahamian police arrested six individuals in connection with the vessel. Those individuals were Haitian nationals. No Bahamian nationals were arrested. Two individuals were prosecuted in the Bahamas.

In December 2003, DEA Special Agent George Kissell became involved in the investigation. Special Agent Kissell participated in multiple coordination meetings between the United States and the Bahamian authorities. During one of the meetings, the possible return of a superceding indictment against the defendant was discussed. During a telephone conversation on February 5, 2004, Bahamian Police Detective Patrick Clark, the principal case agent in the Bahamas, indicated that if an indictment

---

[1] William Saunders is a co-defendant in the instant case.

3

was obtained, the Bahamas would cooperate in arresting and extraditing the defendant to the United States. On February 19, 2004, Bahamian authorities met with United States government officials in Miami, Florida in connection with the arrest of certain Bahamian nationals. At that time, Bernard Turner, Director of Judicial Authority in Nassau,[2] reiterated that the Bahamian authorities would cooperate in extraditing the defendant.

On March 26, 2004, the government obtained a superceding indictment against the defendant and others. On March 31, 2004, Special Agent Kissell traveled to the Bahamas and met with Bahamian authorities. Director Turner told Special Agent Kissell that Bahamian authorities would not extradite the defendant without "independent corroborating evidence in the United States."[3] Since, March 31, 2004, Special Agent Kissell has had no further conversations with Bahamian authorities about extraditing the defendant. The government did not make a formal request for extradition. Special Agent Kissell believed it was a futile gesture to request the extradition of the defendant given the Bahamian authorities' position that they would need independent

_____

[2] In his declaration, Special Agent Kissell appears to refer to Director Turner as the Director of Public Prosecutions. See Declaration of Special Agent George Kissell (DE# 131-2 at ¶ 10, 7/7/09). At the evidentiary hearing, Special Agent Kissell testified that Director Turner was the Director of Judicial Authority in Nassau.

[3] In his declaration, Special Agent Kissell stated that the Bahamian authorities required "additional corroborating evidence originating in the United States." See Declaration of Special Agent George Kissell (DE# 131-2 at ¶ 12, 7/7/09). At the evidentiary hearing, Special Agent Kissell testified that the Bahamian authorities required "independent corroborating evidence in the United States." Special Agent Kissell did not testify that the Bahamian authorities required that the criminal conduct occur in the United States only that there be independent corroborating evidence in the United States.

corroborating evidence in the United States.

Special Agent Kissell added the defendant into the National Crime Center Information Database. By adding the defendant into that database, Special Agent Kissell ensured that the defendant would be arrested if he crossed into United States territory. The DEA also made periodic fugitive checks for the defendant.

Initially, three individuals, Gatsby Antenor, Darryl Calloway and Cesar Cura were indicted in the United States. See Indictment (DE# 3, 4/28/04).[4] In defending his case, Gatsby Antenor (hereinafter "Antenor") stated that he was working as an informant for the DEA. The government ultimately dismissed its case against Antenor. Special Agent Kissell did not interview Antenor about the facts of the instant case after Mr. Antenor's case was dismissed.[5]

Co-defendant Darryl Calloway (hereinafter "Calloway") was recorded on the wire interceptions. Calloway became a cooperating witness as early as May 2005. In May 2005, Special Agent Kissell spoke to Calloway about some of the facts in the instant case. Calloway assisted the government by testifying at four different trials and/or sentencing hearings. See Sentencing Memorandum in Support of Rule 35 Motion in Case No. 05-80053-CR-Hurley, Defendant's Exhibit 3. The government did not advise the Bahamian authorities that it had at least one potential witness, Calloway, that was present in the United States and could corroborate the charges against the defendant.

---

[4] The government indicted these individuals because they were either United States citizens or residing in the United States.

[5] Special Agent Kissell spoke to Antenor's lawyer about speaking to Antenor but did not recall counsel's response.

5

**STANDARD OF REVIEW**

To determine whether a post-indictment delay violates the defendant's constitutional right to a speedy trial, the Court must engage in an ad hoc "balancing test, in which the conduct of both the prosecution and the defendant are weighed." Barker v. Wingo, 407 U.S. 514, 530 (1972). The Court considers four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id.

The Supreme Court has stated that unless a delay is "presumptively prejudicial" under the first factor, a district court does not need to consider the remaining three factors:

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.

Doggett v. United States, 505 U.S. 647, 651-52 (1992)(citations omitted). Courts generally consider delays exceeding one year to be presumptively prejudicial. See United States v. Clark, 83 F.3d 1350, 1354 (11th Cir. 1996)(noting that delays exceeding one year are generally found to be presumptively prejudicial).

Additionally, the Court must assign weight to each factor. "If, after the threshold inquiry is satisfied and the second and third factors are considered, all three of these factors weigh heavily against the Government, the defendant need not show actual prejudice (the fourth factor) to succeed in showing a violation of his right to a speedy

6

trial." United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir. 2006)(citing Doggett, 505 U.S. 647). Conversely, the defendant must demonstrate actual prejudice if the first three Barker factors do not weight heavily against the government. United States v. Harris, 376 F.3d 1282, 1290 (11th Cir. 2004). The Eleventh Circuit has identified three interests that must be considered in evaluating actual prejudice in the context of a Sixth Amendment right to a speedy trial: "(1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." United States v. Knight, 562 F.3d 1314, 1323 (11th Cir. 2009)(citing United States v. Schlei, 122 F.3d 944, 988 (11th Cir. 1997)).

## ANALYSIS

Defendant Neville Ebanks moves to dismiss the superceding indictment for post indictment delay. See Motion to Dismiss Indictment Based on Post Indictment Delay (DE# 127, 6/19/09). The defendant contends that the over five-year delay between his indictment on March 26, 2004 and his arrest on May 8, 2009 violated his Sixth Amendment right to a speedy trial. Id. at 2. The undersigned will address each of the Barker factors in turn.

**1.    Length of Delay**

Over five-years have passed between the indictment and the defendant's arrest. The defendant argues that "the five year delay clearly suffices to not only trigger the speedy trial inquiry but to establish prejudice to the Defendant." See Motion to Dismiss Indictment Based on Post Indictment Delay (DE# 127 at 3, 6/19/09). "The government agrees with Defendant in that a five-year lapse of time between the indictment and arrest gets Defendant beyond the 'threshold point' so that the Court can 'proceed with

7

the final three factors.'" See Government's Response to Defendant's Motion to Dismiss

Indictment Based on Post Indictment Delay (DE# 131 at 4, 7/7/09) (citing Ingram, 446

F. 3d at 1336). The undersigned finds that the five-year delay in the instant case

satisfies the first prong and will address the remaining prongs below. See United States

v. Hayes, 40 F.3d 362, 365 (11th Cir. 1994) (recognizing that "delay . . . of five years

[wa]s sufficient to trigger a careful review of the other three Barker factors required to

establish a violation of the right to speedy trial").

**2.      Reasons for Delay**

The reasons for the delay in the instant case lie entirely with the government.

This is not a case where the defendant concealed his whereabouts or intentionally

eluded capture. In fact, the defendant did not know of the indictment until his arrest in

May 2009 and was living openly in the Bahamas under his own name.

In evaluating the reasons for the delay, the Supreme Court in Barker provided

the following guidance:

> A deliberate attempt to delay the trial in order to hamper the defense
> should be weighted heavily against the government. A more neutral
> reason such as negligence or overcrowded courts should be weighted
> less heavily but nevertheless should be considered since the ultimate
> responsibility for such circumstances must rest with the government rather
> than with the defendant. Finally, a valid reason, such as a missing
> witness, should serve to justify appropriate delay.

Barker, 407 U.S. at 531 (footnote omitted). In the instant case, there is no evidence of a

deliberate attempt to delay the trial by the government. Instead, the defendant argues

that the government acted negligently.[6] According to the defendant, the government

_____

[6] This was the defendant's position during closing argument at the August 24,
2009 hearing.

had two potential independent corroborating witnesses, Antenor and Calloway, but did not attempt to present Bahamian authorities with this evidence to convince them to extradite the defendant.

At the evidentiary hearing, the government conceded that it did not do everything it possibly could to bring the defendant to trial. Nonetheless, the government argued that it made a good faith effort and took reasonable steps. The government presented evidence that the Bahamian authorities would not extradite the defendant absent independent corroborating evidence in the United States. Special Agent Kissell testified that he believed the Bahamas would not extradite the defendant without Director Turner's "blessing." According to Special Agent Kissell, "we needed to have some other investigation or evidence in the U.S. showing . . . that the defendants were involved in this crime." However, Special Agent Kissell did not consider Antenor and Calloway's knowledge of the underlying facts in the instant case independent evidence that would support the extradition of the defendant. Special Agent Kissell further believed that Calloway would have only provided the same information that was in the wire intercepted telephone calls. The government argues that the evidence that Calloway would have provided did not originate[7] in the United States and therefore would not have assisted in convincing the Bahamian authorities to extradite the defendant.

The undersigned finds that the government acted negligently in failing to continue to pursue the extradition of the defendant after the Bahamian authorities told

---

[7] The undersigned finds that the evidence obtained from Calloway originated in the United States because Calloway was prosecuted in the United States and the government's actions in prosecuting Calloway resulted in Calloway's cooperation.

the government they would need independent corroborating evidence in the United States in order to extradite the defendant. In May 2005, Calloway was cooperating with the government and could have corroborated the evidence against the defendant. Calloway was located in the United States. Special Agent Kissell interviewed Calloway in May 2005 about the facts of the instant case yet failed to follow up with the Bahamian authorities in securing the extradition of the defendant. "While the government is not required to exhaust all conceivable avenues for locating [a defendant] after his indictment, it has a 'constitutional duty to make a diligent, good-faith effort' to locate and apprehend a defendant and bring the defendant to trial." United States v. Bagga, 782 F.2d 1541, 1543 (11th Cir. 1986) (citing Smith v. Hooey, 393 U.S. 374, 383 (1969)). In the instant case, the government was not diligent in attempting to secure the extradition of the defendant after Calloway became a cooperating witness in May 2005. Because the reason for the delay lies entirely with the government and was through no fault of the defendant, the undersigned finds that this factor weighs heavily against the government.

### 3.    Defendant Asserted His Right to a Speedy Trial

"A defendant has the 'responsibility to assert a speedy trial claim.'" Hayes, 40 F.3d at 366 (citing Barker, 407 U.S. at 529). The defendant must assert his speedy trial right in a "timely fashion." United States v. Twitty, 107 F.3d 1482, 1490 (11th Cir. 1996). The government argues that "[w]aiting until a week and a half before calendar call in asserting his speedy trial right is inconsistent with [the defendant's] claim now that the government violated his right to a speedy trial." See Government's Response to Defendant's Motion to Dismiss Indictment Based on Post Indictment Delay (DE# 131 at

10

4, 7/7/09).

Here, the defendant did not learn of the indictment until his arrest in May 2009. He is not expected to raise his right to a speedy trial without the assistance of counsel. The defendant was appointed counsel at his initial appearance which occurred on May 11, 2009. See Minute Entry (DE# 115, 5/12/09). The defendant raised his right to a speedy trial on June 19, 2009 when he filed the instant motion. See Motion to Dismiss Indictment Based on Post Indictment Delay (DE# 127 at 3, 6/19/09). The government argued at the evidentiary hearing that the case law takes into account the date of arrest, not the date counsel is appointed. Even considering the date of the defendant's arrest, the undersigned finds that the defendant timely asserted his right to a speedy trial. The defendant raised his speedy trial rights within the 28 days given for motions under the Standing Discovery Order (DE# 24, 5/27/09). Accordingly,  this factor weighs in favor of the defendant and against the government.

**4.      Prejudice to the Defendant**

The defendant argues that prejudice can be presumed because more than five years have passed between the indictment and his arrest. See Motion to Dismiss Indictment Based on Post Indictment Delay (DE# 127 at 3, 5, 6/19/09). The government counters that prejudice can only be presumed if the first three factors weigh heavily against the government and argues that this is not the case here. See Government's Response to Defendant's Motion to Dismiss Indictment Based on Post Indictment Delay (DE# 131 at 10, 7/7/09). If prejudice is not presumed, the defendant acknowledged at the evidentiary hearing that he cannot make a showing of actual prejudice.

The Eleventh Circuit has stated that "[i]f, after the threshold inquiry is satisfied

and the second and third factor are considered, all three of these factors weigh heavily against the Government, the defendant need not show actual prejudice (the fourth factor) to succeed in showing a violation of his right to a speedy trial." Ingram, 446 F.3d at 1336 (11th Cir. 2006)(citing Doggett, 505 U.S. 647). On the other hand, "[w]here the Government has pursued its prosecution with reasonable diligence, however, specific prejudice must still be shown." Hayes, 40 F.3d at 366 (citing Doggett, 505 U.S. 647).

The undersigned finds that the defendant is not required to show actual prejudice under the facts of the instant case because the first three factors weigh heavily against the government. The first factor weighs heavily against the government because the delay between the defendant's indictment and his arrest in the instant case is five times the one-year threshold that the courts have generally considered to be presumptively prejudicial. This is not a case where the defendant's evasive actions contributed to the delay. The second factor, the reason for the delay, weighs heavily against the government because the delay was caused entirely by the government's negligence and through no fault of the defendant. At all times the government knew the defendant was in the Bahamas and that the Bahamian authorities would cooperate in extraditing the defendant if the government presented them with independent corroborating evidence in the United States. In May 2005, the government had at least one cooperating witness in the United States, Calloway, that would have provided corroborating evidence against the defendant. The third factor also weighs heavily against the government because the defendant promptly asserted his right to a speedy trial. Accordingly, the first three factors weigh heavily against the government.

"[T]he toleration of negligence varies inversely with the length of the delay

12

caused by that negligence." <u>Clark</u>, 83 F.3d at 1353. The Eleventh Circuit in <u>Clark</u> noted that "[i]n the absence of proof of particularized prejudice, government negligence and a substantial delay will compel relief unless the presumption of prejudice is either 'extenuated, as by the defendant's acquiescence, []or persuasively rebutted' by the Government." <u>Clark</u>, 83 F.3d at 1353 (citing <u>Doggett</u>, 505 U.S. at 658) (alterations in original). The Eleventh Circuit further noted that "[i]n cases of government negligence, [its] concern for substantiating prejudice decreases as the period of delay increases." <u>Id.</u> at 1353. Here, Calloway became a cooperating witness for the government in May 2005, four years prior to the defendant's arrest. The government's delay in the instant case is four times the one-year benchmark. <u>See</u> <u>Clark</u>, 83 F.3d at 1354 (noting that delays exceeding one year are generally found to be presumptively prejudicial). The Supreme Court has held that an eight and a half year delay, six years of which was caused solely by government negligence, is sufficient to excuse the defendant from having to show particularized prejudice. <u>Doggett</u>, 505 U.S. at 658. On the other hand, a 14 ½ month delay caused by government negligence is insufficient to excuse the defendant from showing particularized prejudice. <u>Clark</u>, 83 F.3d at 1353-54 (citing <u>Robinson v. Whitley</u>, 2 F.3d 562, 570 (5th Cir. 1993)). In the instant case, at the very least, four years have passed since the government had corroborating evidence that it could have presented to the Bahamian authorities to secure the extradition of the defendant. The undersigned finds that this case is more in line with <u>Doggett</u>. Four years well exceeds the length of time (exceeding one year) that is presumptively prejudicial.[8]

_____

[8] The undersigned finds that the instant case is different from <u>Hayes</u>, 40 F.3d 362. <u>Hayes</u> involved a five-year delay between the indictment and the trial. The

13

Lastly, the government has not presented any evidence to persuasively rebut the presumption of prejudice. See Doggett, 505 U.S. at 658. Accordingly, the instant motion should be granted.

## CONCLUSION

After carefully balancing the Barker factors, the undersigned concludes that the defendant's right to a speedy trial has been violated in the instant case. The five-year delay between the defendant's indictment and his arrest is sufficient to trigger an inquiry into the remaining three factors of Barker. The defendant promptly asserted his right to a speedy trial. The reason for the delay lies entirely with the government. The defendant was residing openly in the Bahamas under his given name and had no knowledge of the indictment. Where, as here, the first three factors weigh heavily against the government, the defendant does not need to make a showing of actual prejudice. The length of the delay coupled with the government's negligence is sufficient to presume prejudice. Based on the foregoing, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss Indictment Based on Post Indictment Delay (DE# 127, 6/19/09) be **GRANTED**.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Motion to Dismiss Indictment Based on Post Indictment Delay (DE# 127, 6/19/09) be **GRANTED**.

---

Eleventh Circuit affirmed the district court's ruling that the defendant's right to a speedy trial had not been violated because the defendant failed to show actual prejudice. In Hayes, the Eleventh Circuit noted that the government's reason for sealing the indictment was valid. Id. at 365. "The Government was attempting to apprehend Hayes' co-defendant. . . who was living in Zimbabwe. The indictment was sealed because the Government feared that [the co-defendant] would frustrate its attempts to secure his arrest and deportation if he were aware of it." Id. In the instant case, however, the government has shown no such valid justification for the delay.

Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Patricia A. Seitz, United States District Judge, within ten (10) days of receipt of a copy of this Report and Recommendation. See Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982). **A party objecting to this Report and Recommendation shall promptly provide the Court with a copy of the hearing transcript.**

DONE AND ORDERED, in Chambers, at Miami, Florida this **2nd** day of September, 2009.

_____
JOHN  J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Seitz
All counsel of record